Thank you, Your Honors. Good morning, and may it please the Court, I'm Caroline Platt on behalf of Brett Parkins. I would like to reserve two minutes for rebuttal, and I will try to watch the clock. Great. We respectfully ask this Court to reverse the District Court's denial of Mr. Parkins' motions to suppress. And to begin with the Fourth Amendment motion and focus on the laser pointer, there are at least three separate reasons that the Court should reverse the District Court's denial of the motion to suppress. One is my client's present and audible contemporaneous objection to the consent search consented to by his cohabitating partner. The second is to the extent Mr. Parkins, the Court does not see Mr. Parkins as having been present. That is because the police illegally and unreasonably under the Fernandez holding regarding Randolph removed him from the apartment, and therefore his objection was valid despite, if the Court thinks he was not present, his lack of presence. And the third is the existence of evidence that shows that the police removed him from the mailboxes to the car for the purpose of preventing his objection, which was under Fernandez, objectively unreasonable in terms of the Fourth Amendment. I have a question that's different, and I don't mean to steer your argument, but if I could just get it out of the way before you launch into that. If you can assume for the purpose of my hypothetical that I think there's a problem with the search or that we decide that, then can you go just a step forward to the interrogation and tell me why that is fruit? Do you mean the pre-Miranda? I mean in the police station. You mean the post-Miranda interrogations. So our position would be, Your Honor, that because the police report indicates that they did not have probable cause until they found the pointer, there would never have been a post-arrest interrogation because they would not have arrested him until they found the pointer. So he wouldn't have been arrested at all is your position? Yeah, the entirety of everything that happened. I'm sorry for hitting my phone. Everything that happened, and the police report says they knew they didn't have probable cause without the pointer. So everything else is the fruit of the poisonous tree. But that's where you stop your analysis. There are other cases, of course, where we haven't done that, where we have instead said, oh, he never would have been arrested in the first place. Instead, we've looked to see whether or not the individual being interrogated was confronted with something found in the search. That's right, Your Honor. And I think it's been pointed out in this case that there was no recording of what happened in the car here on the way to the station house. And I think it's a case-by-case analysis. I don't think there's an automatic rule. I think in some cases that would be the outcome, and in other cases it would be this way. But I think here it's very clear that they were not going to arrest him until they found the pointer. And again, I'm trying to not hijack your argument, so I'll get right back to it. But your position then is that because there was a blank, that's my word, in the record for the period in the car that you think the government cannot meet its burden of proof? Correct. All right. And I mean, you're welcome to hijack my argument, Your Honor, because I'm here for you. No, no, you've answered my question. Thank you. So with regard to the first reason, the record is very clear on both body camera videos and otherwise that Mr. Parkins did make very clear his contemporaneous and audible objection to any kind of entry into his home and therefore search of his home under the first holding of Georgia v. Randolph. So we'd create a circuit split by sole ruling, right? I don't think it's necessarily the clearest of circuit splits because these cases are so fact-intensive. Looks like a circuit split to me. How do you get around that? You think it's fact-intensive? Well, I think, I mean, for example, in Bonnevert, I mean, here's why, to the extent there's a circuit split, Your Honor, I think this court would be ruling consistent with its prior holding in Bonnevert, which holds that there it was a silent objection, and therefore you would be... The circuit split already exists if there is one. I think the issue is the Seventh Circuit has the driveway case. Are you talking about Jones, Your Honor? Or the Witsib or whatever that case is, and that's where the guy objects in the driveway and the Seventh Circuit said, nope, not at the doorway, you lose. I mean, do we have to just, it's okay for us to disagree with the Seventh Circuit, but is that what we should do? I think that, I don't think it's a disagreement on a matter of law, Your Honor, and here's why, because the other reason that this case is, I think it's factually distinguishable, is because it's so clear that they pulled Mr. Parkins from inside his home, and all those cases like Witsib and Jones, and also this court's decision in Crapser, those people voluntarily left their home and, like, closed the door behind them, so they were in public at the time of all of the events. But, counsel, your client stepped out of his home. He did. The officer either had what he needed to do, a pat down, or didn't, initiated one, and your client, if the officer had what he needed to initiate a pat down search, it seems to me that there is, I don't know of any authority that would have allowed your client to retreat away from that without having them be able to, you know, sort of pull him back. So, if I may, Your Honor, and because this is not a hypothetical, I'm not fighting your hypothetical, if you look at, between 220- I have watched these videos carefully. His feet are inside the door, Your Honor. Absolutely not. Okay. I would urge you to look for the- I would urge you to re-look as well, because there's one video where it looks that way, and there's another video where I think both feet clearly step outside over that threshold. Oh, he did step outside the apartment, I agree, but at the time that they seized him, that they touched him, he is inside his apartment, and this court's, every court's- So, can I back up? Now I think we've got clear communication. He definitely stepped over the threshold. Thank you for that. So, you're not contending, though, that the officer lacked what he needed in order to initiate a pat-down search, are you? No, but he didn't have a legal seizure, and Terry law is clear that you cannot frisk until you seize, and here the seizure is illegal, which is a- I understand your argument now. Right, and so, because he was, he did step over the threshold, he stepped back behind the threshold before the police grabbed him, and therefore, under every Terry law- Might not be the best use of your time. So, why don't you go- I've hijacked you from Judge Owens's question. So, meanwhile, all of those cases, and we don't contest that there would have been probable cause to frisk because of the sign on the wall about the gun, and the frisk here is a red herring. You said probable cause, did you mean reasonable suspicion? I'm sorry, reasonable suspicion. Okay, that's fine. But the frisk is a red herring because they didn't find anything during the frisk. So, in all of those cases, the person was in public and well outside the building, leaving aside cartilage and or threshold situations apart from what you and I were just discussing, Judge Christin. And so, here, the other thing I would add about cases like Santana and Fernandez itself, in those cases, there was actually probable cause to arrest the person before all of that happened, which is different than reasonable suspicion. And here, they did have reasonable suspicion that this person might be the laser pointer person, but they didn't have probable cause until after they found the pointer, which was 50, five, zero minutes later. And I think the probable cause threshold is something that also distinguishes this case from Santana, from Fernandez, from Matlock, from Jones in the Seventh Circuit, from all of those cases, is that probable cause is a different threshold from reasonable suspicion, and I think materially so. So, to the extent you want to distinguish this case from all of those other cases, Judge Owens, it's the lack of probable cause that we think should define a valid Randolph situation from an invalid Randolph situation. Let me ask you this. So, let's assume for a moment that we hold, and I have no idea if this is what we're going to do, I'm just thinking this through, that it is a premises rule and not a doorway rule. Okay. So, that's better for your client. Yes, we would be thrilled with that. But is it good enough? Because the question is that when he actually made the comments, he was sitting in front of the mailbox. Would we have to remand the case to the district court to make a determination of when he made those comments, if in this particular situation, in this particular apartment complex, was the mailbox considered part of the premises? I think that's one. I think that would be one. I mean, under Scott v. Harris, right, because there's video, it's very clear where everything was. But as to the property implications of this particular apartment complex, I think if the curtilage aspects of this property, I think that's one potential outcome. Counsel, why should property law determine the outcome? Let's say you live in a place that immediately abuts the sidewalk so that if you're one foot outside of your door, you're no longer within the curtilage in a property sense, but you're right there screaming, don't come in, you don't have my permission. Why property law? And if we don't use that, what is the standard we should look to? So, Your Honor, I think in that circumstance, we would still think that that objection was valid because... That's the point. Yes. But that's my question. What's the standard that we should apply if it isn't property law? I mean, if you live on a 4,000-acre estate and you're out by the road and your house is not even walking distance, it doesn't seem reasonable to say that you can object under these principles. So, what is it we should look at? I very much appreciate that question. I think that property law, somewhat from my perspective, unfortunately does have an effect on seizure rules. But in terms of objection rules... Right, that's what I'm... Yes. Sorry, I should have been specific that I'm looking at the Randolph question. Sure. So, the seizure rules, I think there are property implications. For the objection rule, our position would be, as I was saying, if the court is looking for a bright-line rule, we would say that unless there's probable cause to remove you that is objectively reasonable under the Fernandez read of the Randolph holding, we think that even if you're... Like in Crapser, which I believe, Your Honor, was on the panel and I believe wrote, the person in Crapser was one foot outside of his hotel room in a parking lot and therefore in public. But because there's probable cause to arrest someone, as in Santana or Matlock or Fernandez, if they have probable cause to remove you from the scene, I think that's a bright-line rule that therefore the government would argue you have been objectively reasonably removed, but if they don't have probable cause... But that slides over into the question about removal. Let's assume there's no issue about removal. How do we determine what is the line? Do you literally have to be standing within the building? Can you be one foot away? Can you be 40 feet away? How do we determine that if it is not by property law principles? Our proposal for that is that if you are audibly, contemporaneously, and perceptively unequivocally objecting and the police understand you to be objecting to your entry, you have objected. I don't think there is a property aspect to that. I think if they can hear you and they know what you're doing, you have contemporaneously asserted your rights. On the front porch, but not literally in the doorway. Right. I think that's okay. Or if you're next to your mailbox, regardless of the curtilage aspect. I'm just not sure this is the case where we need to make a definitive ruling. Why couldn't we say in this case, under these circumstances, it's the foot of the stair and there's no question they could hear him? Why wouldn't that be enough? I think it is enough. I think the rule here could be property law or not is irrelevant, audibly contemporaneously present is enough here, and the other would be dicta. So in a sense, you would breed the word premises to mean in the vicinity. If you are audibly present and contemporaneously understood to be asserting that right. Okay. And I don't want to, because she's in charge of time, I'm not, but I just want to make sure. You could have a situation where you have a ring doorbell, police show up and someone goes on the ring doorbell and says, hey, don't go into my house. It seems to me the Supreme Court would that's not enough. I mean, you can answer the question by saying that's not this case, and I will accept that. I will take the rare opportunity to do that, Your Honor. One last question for you, if it's all right. In the plea agreement, the actual part of it, paragraph three, that talks about the right to appeal this. It says if defendant prevails on appeal, defendant will be allowed to withdraw defendant's guilty plea. Sure. In this case where you have three different things you're trying to suppress, what does it mean to prevail? That's a good question, Your Honor. I think given our position on the fruit of the poisonous tree, and obviously it would depend on how Your Honors chose to write the opinion, I believe prevail would mean that you vacated his conviction and remanded. Well, but we only do that, right? You can only withdraw the plea if you prevail in this appeal. And so my question is that there are three things you're trying to suppress. There is the finding the laser pointer, there's the statements he makes in the courtyard, and there's the statements he makes in the police station. So what if you success the statements and not the pointer? What if you win on one? Let's say we agree with you on the laser pointer, but we disagree on the courtyard and we disagree on the police station. Right. Have you prevailed? I think the way that I answered is right. I think technically as a matter of appellate procedure, we've prevailed if you vacated the conviction without regard to your decision on the evidence. We'll take that answer and ask you to wrap up. Yes, thank you, Your Honors, and I apologize for... When you come back to the podium, we'll put two more minutes on the clock, okay? Thank you, Judge. Let's hear from opposing counsel. Thank you. Good morning, and may it please the Court, Kristen Spencer for the United States. It's well settled that a warrantless search of a premises does not violate the Fourth Amendment when the police obtain the voluntary consent of an occupant with authority to consent. The Supreme Court in Randolph recognized a limited exception to this general rule when two occupants, both of whom have authority to consent or refuse to consent to a search, are in fact standing at the door of the premises at the time the consent is requested. Counsel, the court in Fernandez acknowledged that the term physically present resident is ambiguous, and it sounds like you don't quarrel with the proposition that the defendant here had the authority to refuse consent as a co-occupant. So it seems to me weirdly, overly formalistic. I mean, if the person, to use my earlier example, takes one step off the front stoop and says, no, you can't come in, they say, you know what? You're not in the doorway, so we're coming on in because the other person wants us. Is that really your position? Well, I would respond that the Supreme Court in Randolph did say that it intended this rule to be a formalistic rule, and I understand that the court in Fernandez... Is that a yes to Judge Graber's question? Yes, that is our position. That is a formalistic rule, and that that was the Supreme Court's intent. And we understand that the court in Fernandez did acknowledge that the boundary of the premises may be disputed, and that the question is whether or not the defendant is on the premises. So you would adopt a property rule distinction. So if my doorway is right next to the public sidewalk and I lean out or take one step, that I can no longer have a valid refusal to consent because I'm on the public sidewalk. Is that right? Well, I think that there is a question of the extent of the premises. I think in this case, that's not the case that we have here. In this case, he was certainly not on the premises when he was making the objection. At first, he was 20 feet away, and then by the time he made the objection, he was even further away at the mailboxes. I don't think that that's a situation in which he could be considered to be on the premises. And so I don't think the court in this case needs to decide specifically what the outer boundary of the premises is because it's so clear in this case that he was not on the premises. It's so clear because? It's so clear because he was... He started on the premises, and opposing counsel argues they removed him. I appreciate that Randolph talks about removing for the purpose of, but in this case, it seems to me it's pretty clear he starts on the premises. They certainly removed him. And then what we have here, unlike the other cases, is a very audible objection from him. The district court didn't think so. The district court thought it was equivocal. I don't see any... Is your position that his objection was equivocal? Yes. Our position is that his objection was equivocal and therefore was not an express objection. Okay. I'm going to circle back to that. But the other thing I want to make sure that you answer is, Judge Graber asked you whether or not... I think she asked you to assume. Is it correct that you're not objecting or contesting that both parties... Mr. Parkins had the ability to object? Correct. Okay. So at ER 2021, the court order talks about Parkins recognizing that Hart had the authority, and then the court footnote or the district court footnote that her name was the only one on the lease. That is not your position. You're not contesting that Parkins could object. No. And I don't think the district court was insinuating that Parkins could not object either. Just simply that Hart had the authority to object or consent to the search. And that it is worth noting, I think, that her name was on the lease. And I think that the fact... Why is it worth noting? Why is it even relevant to the analysis? I think it goes to whether or not a defendant's objection was an express objection, because he was directing his comments at Hart. So what? I think he recognized her authority as well. No, he recognized that she was there and he was being held by the police. If he'd been still on the premises, he would have just said, don't come in. But he couldn't. I think he could have... Well, I would not necessarily agree that he couldn't say that you can't go in. He had many opportunities to tell. But anyway, you're not contesting that he had the authority? No. Okay. I want to... I'm sorry. No, go right ahead. Kristen, I want to pursue this question. So in your view, the comments must be directed expressly to the police. Let's say they'd both been standing in the doorway and she said, I think I want to let him in. And he says to her, do not let them in. I do not want them in here. They should not come in. But he doesn't say it directly to the police. Is that good enough? Does he have to direct it to the police? Well, I think that his specific comments in this case... No, that's not my question. Please answer the question. Do the comments have to be directed at the police rather than at another occupant of the premises in order to be valid in your view? I think that in this case, they would have needed to be directed to the police because they need to be expressed. That's not my question. Is that a rule? Does it have to be directed to the police? Or is it sufficient if it is clear what the message is, but it is directed to the co-occupant? I think it's sufficient if it's clear what the message is. But in this case, I don't believe that it was clear what the message is specifically because he didn't say, don't let them search. He said, don't let them outside. He says, don't let... This goes back to, I asked you a minute ago, was this unequivocal? And you said no. And I think we're getting to that now. Correct. He said at ER 168, don't let the cops in and don't talk to them. Correct. Don't let the cops in. What is ambiguous about that? Well, as the district court found, it was letting her make the decision. Okay, so this goes back to... That is what the district court, I think, found in context. He talks about this being directed to her, this comment being directed to her as opposed to the police officers. Judge Graves just explored that with you. And then he also talked about that it needed to be unequivocal. Correct. So how does this fall short? I think by directing the comments to her, it was not unequivocal. As the court in Fernandez recognized, both of the occupants have authority. And to say that when he gives her instruction as to what she should do, if the court is going to defer or if the police have to always defer to one partner's instruction, to their other partner about what they should do... He's giving the direction to her is because they weren't asking him. They weren't asking him. They asked her and he knew it. And so he said, I think very clearly, don't let the cops in. I don't know what else he really could have said. I think he could have said to the police, I don't want you to go into my apartment. I'd like you to talk to her outside. Okay. So fast forward, if we were to decide that there's something wrong constitutionally infirmed with this search, then what happens farther down the line? In particular, I'm interested in the comments that Mr. Parkins made when he was in the police station. Do you think that's fruit, tainted fruit or not? I do not. I think that as was discussed earlier, this is a case where the comments were not... They were not the result of the search and there's no evidence that they were. And the court recognized and pointed out that as the defense pointed out in their brief, that there was a brief period of time where it was unrecorded. I think the court can infer from the defendant's comments in the Mirandais interview that he was not informed that a laser was found during that time because he continued to deny that he owned a laser and he wouldn't have done that. When he was in custody, he admitted that he owned a laser. He just said he didn't point it at anybody. What we often see in many cases is that officers confront the defendant with something rather that was found in the search. And I can't see that the officers really do that here. There's one question where they ask him whether the laser had any etching or marking on it. And of course, they know at that point that it said RET on it, but they didn't directly confront him, I don't think, with anything else found in the search. But opposing counsel's argument is that he would never have been arrested because they didn't have probable cause to arrest him but for the laser. So I want to back up on that point. There is a notation in the police report that opposing counsel mentioned. But, and the briefing doesn't talk about this, but there are observations that seem to be important to the prosecution that were made from up in the helicopter. And the folks in the helicopter were communicating to the guys on the ground. But the guys on the ground didn't see any of those images. So what I can't tell from this record is the extent to which any of those images that the police officers in the helicopter thought identified Mr. Parkins, whether any of that had to be sort of ginned up or analyzed back at the shop before they really knew that this was the guy, or whether the, what you're relying on is the knowledge from the folks in the police officer being imputed to the officers on the ground. I think what happened here is the officers in the helicopter observed a person who looked like defendant. They saw him going around the apartment complex. They saw a person who looked like defendant go up and then they, I apologize, then they communicated that to the officers on the ground who saw a person matching that description on the balcony. I know all that. I'm asking a different question. Right. So there's a, we have the images and we've all studied the record, but what I can't tell is whether or not, you know, some of it doesn't look like much to the untrained eye. So I can't tell whether the people in the helicopter had to, whether those images had to be, you know, sort of further examined later in order to match up to the defendant. What the record tells me is that the folks on the helicopter made these observations. They certainly could see the pointer. You can see the green light, you know, very, very clearly. But beyond that, they're describing somebody by build and, you know, sort of very general physical description and mentioning that his shirt had changed and whatnot. They say that he looked up. I can't tell whether or not they knew at that time, you know, how he looked, whether they could have identified him. This all goes to was, was there probable cause? I don't think they could have identified his face, but my understanding is that they, the that we see and we have is the same video that the technical officer could see on the helicopter. And so maybe I should ask more directly. Do you think that there was probable cause to arrest Mr. Parkins prior to the time they found the pointer? I do think that. Because they had, at that time, they had seen, they had the information from seeing the defendant or seeing someone who looked like him going around. Okay. So the guys in the helicopter had that and that goes down to, you're imputing that knowledge to the men on the ground, yes? Yes, correct. And I think that that, that's fair because it was shared with them and it's what all of the officers together knew to establish probable cause. And I think in this case they did have it. Okay, so not to belabor the point, but then there's an indication on the, on the police report that, that probable cause was determined when the, when the laser was found. And I'm guessing, but again, there's some guessing that has to happen here, that the image is from the helicopter. Is that a correct understanding? I think that's correct, but it's also, it was also written after the fact. And so the fact is that they did have the, the laser at that point. And so that did contribute to probable cause, but that's not to say they wouldn't have probable cause without it. Thank you. All right. Thank you very much for your patience with our questions. Maybe I should say patience with my questions because my colleagues didn't test your patient, just me. Thank you, Your Honors. I'll just make it. We'll put two minutes on the clock, please. Thank you. I'm trying to be the clock police because I'm sitting with Judge Graber and she was always very good about that. Okay, go right ahead. Thank you, Your Honors. Just a few points, if I may, in rebuttal. As I know the court is aware under, under Randolph, an objection, if the court believes there was one, is given dispositive weight under Randolph, regardless of the presence of, of another person who has given purported consent. And I would just like to note, there is no equivalent of a Salinas rule, like for Miranda, where there's magic words like, you know, I assert my right to remain silent. There is no equivalent in the Randolph context, I believe, in any circuit. And even if there was, Mr. Parkins asked to go back upstairs and the police said, no, you're detained. He asked multiple times if he was arrested and the answer was, you're detained, you're detained, you're detained. Right. So if we think that the search was infirm, then what's your best argument about the rest of the downstream? Yes. So in terms of the statements, as Your Honor, I believe was getting to, while he did eventually at the station admit that he possessed a pointer, he never possessed, he never admitted that he used a pointer, as I believe Your Honor was saying. And there is, I think if we ever got to this, there is an uncorroborated confession rule and he never even confessed. And as we said, we don't think he would have been arrested because the police did not think there was probable cause. I know it's an objective standard. What if we think there was probable cause? So the other thing is, Your Honor and my friend were talking about the collective knowledge doctrine, but the government has never relied on the collective knowledge doctrine until you asked about it. And it was their burden because it's a warrantless search. And so I don't think, I think it's too late now for the government to rely on that. And also there's no- The last thing she said was that when they had the pointer, for sure they had probable cause, hence the notation in the police report that you mentioned, but that doesn't mean they didn't have probable cause earlier. That's right. I don't think they did have probable cause earlier because the images were very blurry. And I mean, I don't think that my client was the only nondescript white man holding a water bottle in Huntington Beach, California. This is a large apartment complex and there's actually time gaps in the video images and the video stills where they didn't have a constant stream of image of the person who had pointed the laser to the person who went into the building where then they saw Mr. Parkins on the balcony with the bowl of cereal. And so I don't think they had probable cause, even though we admit there was probably reasonable suspicion. And again, collective knowledge requires the communication between the officers of whatever the police in the helicopter told the police on the ground and whatever that was, we don't know it. And therefore, I don't think they can meet their burden to show probable cause prior to the pointer, even had they previously made that argument and demonstrated that to your honors. Quick question, counsel. Yes, sir. Is it your argument that the objections to this search began on the premises? Yes. And that in a sense, it was a continuing objection? Yes. It began and it continued at the mailboxes and in the car. If we were to agree with you on that, then we would then under Randolph or the other case, then we don't have to determine exactly, you know, were you 20 feet away, were you 15 feet away if the objection started in the doorway? That's right. Okay. Further? I want to thank you both for your very helpful arguments. We'll take this case under advisement and go on to the next case on the calendar. Thank you, your honors. Thank you.
judges: GRABER, CHRISTEN, OWENS